UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

RONALD F. GREENSPAN, in his capacity as COURT-APPOINTED RECEIVER for AEQUITAS HOLDINGS, LLC, an Oregon limited liability company,

        Plaintiff,

    v.

MICHAEL J. NEWMAN, an individual; and SUSAN L. NEWMAN, an individual,

        Defendants.

Case No. 3:19-cv-375-JR

OPINION & ORDER

Russo, Magistrate Judge:

    Plaintiff Ronald F. Greenspan, as the Court-appointed Receiver for Aequitas Holdings, LLC, brings this action against defendants Michael and Susan Newman (the Newmans) asserting breach of contract, breach of security agreement and foreclosure of security interest, money had

and received, unjust enrichment, and foreclosure of pledge and voting agreement. Both parties now move for summary judgment. For the reasons stated below, summary judgment is granted in favor of the Receiver.

BACKGROUND

Plaintiff Ronald Greenspan is the receiver acting under the authority granted by the Court's April 14, 2016, Order Appointing Receiver in Securities and Exchange Commission v. Aequitas Management, LLC, et al., Case No. 3:16-cv-00438-JR. Under the terms of the Receivership Order, the Receiver is responsible for taking custody and control of Receivership property and bringing such legal actions as may be necessary to discharge his duties. The Receivership entities include Aequitas Holdings, LLC (AH), Aequitas Commercial Finance, LLC (ACF) and APF Holdings, LLC (APF).

On or about December 17, 2010 the Newmans executed a promissory note and entered into a loan agreement with ACF. In return for a commercial loan of $325,000, the Newmans promised to make monthly interest payments on the outstanding balance of the note. The Newmans also agreed to pay an additional principal payment of $100,000 on or before June 17, 2012. The additional principal balance and all accrued unpaid interest was due on or before the maturity date of December 17, 2013. Ex.1 to the Complaint (ECF #2). At the time of the loan, Bob Jesenik, CEO of Aequitas, was married to Susan Newman's sister. Jesenik is alleged to be the architect of the Ponzi scheme asserted in the 18-cv-438-JR action.

On December 1, 2012, ACF and the Newmans amended the note and loan agreement decreasing the interest rate from 20 percent to 11 percent. Ex. 2 to the Complaint (ECF #2-1). On December 17, 2013, ACF and the Newmans again amended the note and loan agreement to extend the maturity date to December 31, 2016, and to include principal as well as interest in the monthly

payments such that the principal balance would be reduced to $200,000 or less by December 31, 2014 and $175,000 or less by December 31, 2015. Ex. 3 to the Complaint (ECF #2-2).

Michael Newman asserts that in July 2014, Jesenik told him that the loan was going to be written-off and that the Newmans could stop paying at the end of 2014. Michael Newman Deposition at p. 40. (ECF #28-2). Michael Newman did not ask how the loan write-off was going to be accomplished. Id. at p. 41. Susan Newman states Jesenik said he had "forgiven that loan … [s]top paying." Susan Newman Deposition at p. 25 (ECF #28-1). Susan Newman stated Jesenik did not explain how he would accomplish the loan forgiveness, but that "it was like a gift." Id. Mrs. Newman further stated that Jesenik never represented that Aequitas was forgiving the loan. Id. at p. 32. She also stated that in return for the "gift" the Newmans gave Jesenik and Aequitas their "thankfulness." Id.

> Following the July 2014 meeting, Michael Newman wrote to Jesenik:
>
> This is one of those times where words don't say enough... "Thank You"
>
> Sue and I would both like to give you 18% of our Stock in Dayspring, the approximate equivalent of the $223,000 investment you have offered to make on our behalf, based on our original investment in Dayspring. It would be 5.5% of the Total Dayspring Stock.
>
> It may help to alleviate the tax issues? This could add both positives and negative connotations, I realize. We can chat about it over the coming weeks.

Ex. 4 to the Declaration of Brad Foster (ECF #27-4).[1]

---

[1] Defendants object to Foster's declarations as inadmissible hearsay arguing he is not the custodian of records for Aequitas. However, Foster states he was retained by the Receiver to determine the nature, location, and value of all Receivership property as well as to review the books, records, documents, accounts, and all other instruments and papers of the Receivership entity. Foster Declaration (ECF #27) at ¶¶ 1, 3. The Receiver and his agents now stand in the shoes of the Aequitas entities and, as such, Foster qualifies as custodian of records for Aequitas and may introduce the business records of the Receivership entity. See. E.g., Warfield v. Byron, 436 F.3d 551, 559 (5th Cir. 2006) (Ponzi scheme receiver qualified as records custodian for receivership entity).

>Jesenik responded:
>
>>Working on distribution of note to me personally. Will then be able to gift you $40k-50k/ year end and then Jan 1 as well. At that point you can stop making payments, and in a couple years we will be done. Hang in there.
>
>Id.

On November 11, 2014, Ryan Steffner, a financial analyst with ACF, wrote to Michael Newman regarding the $23,000 payment that was due before the end of the year to bring the loan balance to under $200,000. Ex. 5 to the Declaration of Brad Foster (ECF #27-5).

Michael Newman responded that he and Jesenik were working on it. When Steffner asked what he and Jesenik agreed to so he could handle changes on his end, Newman responded, "You should probably talk to Bob J. to get his ideas on this one." Id.

In April 2015, discussions regarding the conversion of assets from ACF to APF concluded. Foster Declaration (ECF #27) at ¶ 11. Accordingly, ACF's rights in the loan were transferred to AH as part of its non-cash investment conversion to APF. Exhibit 6 attached to the Complaint (ECF #2-5).

On July 22, 2015, Jesenik confirmed to Aequitas general counsel Bob Holmen that he planned to buy out the Newmans' note from AH. Ex. 6 to the Declaration of Brad Foster (ECF #27-6). Holman therefore stated an intent to prepare an assignment and assumption agreement wherein Jesenik assumed AH's rights under the note in return for Jesenik's payment to AH for the amount due on the note. Id.

Although a draft assignment was prepared, Jesenik did not execute the agreement. Ex. 7 to the Declaration of Brad Foster (ECF #27-7); Declaration of Brad Foster at ¶ 12. The loan remained on the agenda but unresolved through the Aequitas integrated tax meetings into January 2016 and remains unpaid to date with an outstanding balance of $380,082.25 as of December 31, 2019. Id. at ¶¶ 13-14.

On or about August 9, 2018, Bob Jesenik indicated:

> In 2014, Mike and Sue experienced certain financial difficulties and Mr. Jesenik agreed to apply the proceeds from his Aequitas incentive compensation to the loan balance which would have been sufficient to satisfy their outstanding loan. The 2014 incentive compensation was due to be paid in 2015. As a result of the situation with Aequitas, the compensation amounts due to the officers, including Mr. Jesenik, was never paid and therefore the proceeds of the 2014 incentive compensation were not applied to the loan.

Ex. 3 to the Declaration of Sara Cotton (ECF #28-3).

## DISCUSSION

As noted above, the Receiver brings claims for breach of contract, breach of security agreement and foreclosure of security interest, money had and received, unjust enrichment, and foreclosure of pledge and voting agreement related to the Newman's failure to repay the loan they received from ACF. There is no dispute the Newmans failed to repay that loan. Accordingly, the Receiver moves for summary judgment on his claims for relief. The Newmans also move for summary judgment asserting the agreement between them and Jesenik in July 2014 constitutes an accord and satisfaction extinguishing the debt they owed to ACF and subsequently to AH. The Newmans also suggest they and ACF entered into a release agreement or that ACF and AH waived any right to pursue the collection of any amounts due under the loan.

A.   Accord and Satisfaction

Under conventional contracting principles, if parties dispute their rights under a contract in good faith, they may resolve that dispute through accord and satisfaction. Accord and satisfaction is the substitution and execution of a new agreement in satisfaction of the former agreement. Erickson v. Am. Golf Corp., 194 Or. App. 672, 680, 96 P.3d 843, 848 (2004). In the creditor/debtor context, an accord and satisfaction results when a debt is unliquidated or disputed

5 -   OPINION & ORDER

in good faith, the debtor offers a sum on the condition that it be received as full payment, and the creditor accepts it. Id. at 680-81. Accord and satisfaction is an affirmative defense and the burden is on the Newmans to establish the new agreement. Id.

In support of the new agreement, the Newmans offer their own recollection of statements made by Jesenik personally and do not offer any evidence that ACF or AH agreed to accept either no further payments as Susan Newman suggests or regular payments only through the end of 2014 as Michael Newman suggests. Indeed, the testimony of the Newmans, at best, established that Jesenik offered them a gift of repaying the loan for them. To the extent the Newmans argue that in lieu of the loan payment they offered 18% of their stock in Dayspring, they provide no evidence that ACF agreed to accept this stock transfer in satisfaction of the loan or that they actually transferred the stock.

In addition, an agreement to take less than the whole amount of a liquidated claim is not supported by sufficient consideration and is, therefore, unenforceable. Portland Mortg. Co. v. Horenstein, 162 Or. 243, 248, 91 P.2d 533, 534–35 (1939). Assuming the Newmans continued to pay amounts due on the loan through the end of 2014 per the alleged agreement with Jesenik, that would not be sufficient consideration for any promise for a new agreement in satisfaction of the loan agreement. See id. at 162 Or. at 248, 91 P.2d at 535 (Since a debtor incurs no legal detriment by paying part or all of what he owes, and a creditor obtains no legal benefit in receiving it, if such a payment is made at the place where the debt is due in the medium of payment due, and at or after maturity of the debt, that payment is not sufficient consideration.).[2] Defendants have not

---

[2] Defendants' argument that Aequitas' agreement to forebear pursuing collection is sufficient consideration under Emmert v. No Problem Harry, Inc. 222 Or.App. 151, 192 P.3d 844 (2008), fails to demonstrate what consideration they provided in support of the alleged agreement. In Emmert, in exchange for the forbearance, one party agreed to allow access to property to which the other party would not otherwise have had a right. Id. at 222 Or.App. at 155, 192 P.3d at 848. In addition, to the extent defendants cite Emmert for the proposition that Jesenik agreed to answer for their debt, they still do not offer any consideration on their part, and any such agreement must be in writing. Or. Rev. Stat. § 41.580(1)(b).

demonstrated a genuine issue of fact as to whether they and ACF entered into an accord and satisfaction.³ The Receiver is entitled to summary judgment on this defense.

B.   Release

A release is a contract that, if not under the seal of the releasor, must be supported by a sufficient, valid or valuable consideration. In re Kulka's Estate, 142 Or. 104, 113, 18 P.2d 1036, 1039 (1933). As noted above, there is no genuine issue of fact that the Newmans did not provide consideration in return for release from the loan agreement. Accordingly, the Receiver is entitled to summary judgment in his favor regarding the alleged release.

C.   Waiver

> Waiver is the voluntary relinquishment of a known right…. A party to a written contract may waive a provision of that contract by conduct or by oral representation. Unlike a modification of a contract, waiver can be accomplished unilaterally, and it need not be supported by consideration.

Bennett v. Farmers Ins. Co. of Oregon, 332 Or. 138, 156, 26 P.3d 785, 796 (2001). However, a waiver must be clear, unequivocal, and decisive. At best defendants demonstrate that Jesenik agreed to distribute the note to himself so they would not have to pay the remainder of the loan. Defendants provide no support that ACF or AH clearly, decisively, and unequivocally waived any right to collect on the note. Indeed, the note itself provided that the lender may delay or forego enforcing any rights or remedies under the note without losing them. Ex.1 to the Complaint (ECF #2) at p. 3 (Promissory Note at ¶ 19). In addition, the loan agreement provided that the "Lender shall not be deemed to have waived any rights under this Agreement unless such

---

³ Defendants speculate that Aequitas tax information will confirm that Aequitas acknowledged the extinguishment of the debt and accepted the tax benefit in the form of a bad debt credit against income as a result of the parties' agreement. Speculation is insufficient to overcome summary judgment and the Receiver confirms that books and records of Aequitas show the loan was never written off or reserved and did not issue a 1099-C to the Newmans indicating a cancelation of the debt. See Supplemental Declaration of Brad Foster (ECF #31) at ¶ 4.

7 -   OPINION & ORDER

waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right." Ex. 1 to the Complaint (ECF #2) at p. 10 (Loan Agreement at ¶ 11(h). Accordingly, the Receiver is entitled to summary judgment in his favor on the issue of waiver.

D.  Promissory Estoppel

In their response to the Receiver's motion for summary judgment, defendants suggest the court apply promissory estoppel to prevent unjust collection of the loan because of their reliance on Jesenik's promise to "release" them from payment. However, defendants did not raise this affirmative defense in their answer. Nonetheless, defendants fail to show that Jesenik made the promise to release them from further payment under the loan on behalf of ACF or AH. Indeed, the record evidence shows, at best, that Jesenik intended to personally pay the loan as a gift. Neither ACF nor AH made any promise to the Newmans upon which they could have relied.

E.  Default on the Loan

There is no genuine issue of material fact that the Newmans failed to repay the loan as agreed in the promissory note and loan agreement. Accordingly, the Receiver is entitled to summary judgment on his claims for relief.

CONCLUSION

The Receiver's motion for summary judgment (ECF #26) is granted and the Newmans' motion for summary judgment (ECF (#20) is denied. The Receiver shall submit a proposed judgment for the Court's signature within 30 days from the date of this order.

DATED this 16th day of March, 2020.

                                         /s/ Jolie A. Russo
                                         JOLIE A. RUSSO
                                    United States Magistrate Judge